Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Anne B. Jorgensen and Justice George Bridges. The case is number 2-19-10-53. Tory W. Kieckhaefer, Plaintiff Appellant v. Roscoe Township et al., Defendants Appellees. Arguing for the Appellant, Alexander J. Smith. Arguing for the Appellees, Stacy K. Shelley. Thank you. Mr. Smith, you may proceed. Good morning, Your Honor. Alex Smith on behalf of the Plaintiff Appellant. Your Honor, in Section 1 of our brief, we argued that the evidence in the case so favors the Plaintiff that judgment notwithstanding the verdict should be entered. Alternately, the verdict was against the manifest weight of the evidence requiring a new trial. Judgment notwithstanding a verdict is appropriate where all the evidence, when viewed in the light most favorable to the non-movement, so favors the movement that no contrary verdict based on the evidence could stand. The standard of review is de novo. A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based on the evidence. The standard of review is abuse of discretion. In our brief, we discuss the evidence as it relates to the two alleged acts of negligence by Defendant Nimmer in Instruction 20.01. That Nimmer turned left from the shoulder and that he failed to keep a proper lookout for other vehicles while turning left from the shoulder. And the evidence overwhelmingly favors the Plaintiff's position on both issues. With regard to Nimmer turning left from the shoulder, literally all of the physical evidence at the scene supports that the accident happened that way. The defense relies on the testimony of their accident reconstructionist, Mr. Bergmayer, which is set forth in detail in our brief as fatally flawed and unsupported by any of the evidence at the scene. With the opinions provided by Bergmayer so clearly wrong, that leaves the testimony of Nimmer and Martin as the sole evidence that they were traveling in the eastbound lane, and their testimony is not credible. They lied to the investigating police about how the accident happened in an attempt to avoid liability for Nimmer, and their story is unsupported by any of the scene evidence. On the other 20.01 instruction that Nimmer failed to maintain a proper lookout while turning from the shoulder, the evidence is clear that they were negligent in looking for approaching vehicles. As a motorist, Mr. Nimmer had a duty to use reasonable care in driving his tractor. A reasonable driver of a slow-moving 5,000-pound tractor pulling a mower doesn't look behind himself repeatedly and not see an approaching vehicle on an unobstructed roadway on a clear sunny day while making a turn. There was clear negligence under both of the instructions that reached the jury in this case. No contrary verdict based on the evidence could stand, even when viewed in a light most favorable to the defense, and judgment notwithstanding a verdict should have been entered. Alternately, the opposite conclusion was clearly evident in the jury's decision not based on the evidence requiring a new trial. In section two of our brief, we argued that the trial court erred in granting summary judgment on count six of plaintiff's third amended complaint, finding that the tractor involved was a farm tractor, which did not require brake lights or turn signals, and that there was no evidence of proximate cause. In count six, we alleged that Roscoe Township was willful and one for failing to equip its tractors with brake lights and turn signals as required by the Motor Vehicle Code for 40-plus years. In finding that the township's tractor was a farm tractor, the court erred as a matter of law by not recognizing that a farm tractor must be used for a farm purpose to qualify for the exemption. The plain language of the statute requires that the vehicle be both designed and used primarily as a farm implement. Although it was designed as one, the tractor at issue was used primarily for municipal purposes of mowing the road's shoulder, so it should not have qualified for the exemption. With regard to no evidence that a lack of turn signals or brake lights proximately caused the accident, the court said that because the plaintiff had amnesia, there was no way to prove that he saw the vehicle. However, there's strong evidence that he saw the vehicle as set forth in our brief. The evidence shows there was clearly an act of avoidance, and even the defense theory that he was passing requires that he see the tractor. Proximate cause consists of cause in fact and legal cause. Cause in fact, with an unobstructed view, as the evidence indicates, the logical conclusion is that had there been brake lights and turn signals, he would have seen them and stopped. For legal cause, a reasonable person could infer that the plaintiff's injury was caused by the lack of safety equipment on the turning vehicle. Clearly, these are issues of fact that should have been left to the jury. In Section 3A, we argue that the court erred as a matter of law by allowing the testimony of physician's assistant, Jimmy Walker. The plaintiff told him at the ER that he was traveling 65 to 70 miles per hour at the time of the collision. In our brief, we broke this down into four subparts. One, the probative value of the statements is outweighed by their prejudicial effect. Two, the statements are hearsay and should not have been allowed as an exception. Three, there is insufficient evidence that the plaintiff had personal knowledge. And four, the plaintiff lacked capacity to make the statements as to speed. All these subparts in 3A derive from the inherent unreliability of the statement. The statement was unreliable because the plaintiff was high as a kite on hydromorphone, diagnosed with a concussion, reported having amnesia and no memory of the accident contemporaneous with the statement, was suffering 10 out of 10 pain when the statement was allegedly made, and there's no physical evidence that supports the speed of 65 to 70 miles per hour reported. And in fact, both experts contradicted it. Looking at our subparts, these factors made the probative effect of the statement minimal, whereas the prejudicial effect of violating the speed limit was high. Exceptions to hearsay are supposed to be inherently reliable, and these facts show that the statement was not. He had amnesia and so no personal knowledge. And lastly, the defense was not capable of showing that he had capacity to make the statements. For those reasons, the statement should have been excluded from evidence. In Section 3B, we argued that the trial court erred as a matter of law by allowing the opinion testimony by defense expert Roger Bergmaier, which was contradicted by defendant's witnesses and without any evidentiary support. In his evidence deposition, Mr. Bergmaier provided opinions that Mr. Kaefer, number one, failed to keep a proper lookout for the vehicles ahead of him, number two, followed at an improper distance, number three, drove at a speed that was greater than reasonable, and number four, passed Mr. Nimmer's tractor in the westbound lane. As set forth in detail in our brief, these opinions are wholly unsupported by the evidence in this case, contrary to the facts shown in sworn testimony and photographs, and speculative, misleading, and confusing. Defendants can provide no factual basis for these pre-collision opinions because there is no evidence that supports them. Neither Nimmer or Martin saw the cycle approaching, and the seen evidence doesn't support them. The fluid from the ruptured radiator and all the debris from the cycle are at its final resting place on northbound Pleasant Valley Road. Martin testified at trial consistent with his deposition testimony that the cycle stopped right at the place where the collision occurred, quoting the point of impact on northbound Pleasant Valley Road. It's common sense that one doesn't pass a vehicle traveling eastbound at an intersection by going into the northbound lane. There was obviously an act of avoidance to get there, and that refutes all of Mr. Bergmaier's positions in this case. Regarding events prior to the collision, because they are based on a collision occurring in the westbound lane that didn't happen there, and the plaintiff lacking sufficient time to react, which clearly he did react. Under Illinois law, the admission of an expert's testimony requires a proponent to lay an adequate foundation, establishing that the information on which the expert bases his opinion is reliable. There must be sufficient data about the accident evidence to provide a reasonable basis for the expert's opinion, and the testimony cannot be based on mere conjecture and guess. Clearly, that didn't happen here. The court erred in allowing these baseless opinions into evidence. In Section 3C, we argued that the court erred as a matter of law by allowing defendant's expert to present demonstrative evidence using the tractor and an exemplar cycle. First of all, the evidence was not properly disclosed under Rule 213F and 218. The party must provide the gist of the testimony on each topic for controlled experts. And as set forth in detail in our brief, this did not occur. Secondly, the probative value of Mr. Bergmaier's testimony using the tractor and cycle was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury because it was based on numerous assumptions, ignored evidence contrary to its theory of the collision, and involved at least one aspect of the case for which there was no identified support in the record, that the location of the collision was south and west of the scrape marks. Lastly, defendants failed to lay an adequate foundation for the evidence. They got key facts wrong in the presentation, like the way the wheels of the tractor were straight instead of turned, or the way the cycle's front wheel was turned down instead of up. Bergmaier states that he is unconcerned that the physics of objects in motion don't match his static demonstration. He is unable to say what the angles of incidence are beyond pure speculation, which is what his entire presentation was about. Without sufficient evidence to base his theory, this testimony should have been excluded. Finally, in section four of our brief, we argued that the court abused its discretion by not fully advising the jury of all of the available negligence. At the jury instruction conference, we submitted to the court our proposed instruction 20.01 and argued that the instruction should include item D, that Nimmer negligently drove to the northeast shoulder of the road and ran over the plaintiff, and A, that Nimmer failed to keep a proper lookout for other vehicles. Both were refused by the court. During the trial, defendant Nimmer testified that he saw the plaintiff's body go up and over the front of his tractor and come to rest on the northeast shoulder. Plaintiff's reconstructionist Dan Billington testified that there was nothing interfering with Nimmer's ability to steer the tractor, and that he steered it to the northeast shoulder in a controlled maneuver. Nimmer and Martin both testified that Nimmer ran the plaintiff over on the northeast corner of the intersection. The jury is fully capable of determining that the tractor driver behaved negligently based on the foregoing testimony and evidence. As to subsection A, there is a general duty to use reasonable care not to cause harm to other motorists when driving. For someone driving a large, slow-moving, and dangerous piece of machinery like the tractor at issue, it is reasonable to look behind when making any turn. Both Nimmer and Martin testified to doing so repeatedly, but still failing to see the approaching cycle in plain view. Of course, given instructions were A, failing to keep a proper lookout for other vehicles while turning from the shoulder, and B, turning left from the shoulder of the road. By tying the two instructions together and making A contingent on and redundant with the finding of negligence under B, the jury was prevented from considering evidence of negligence if it found that the tractors were traveling on the roadway instead of the shoulder. And for those reasons, the instructions did not fully apprise the jury of the negligence available to it. And that's all that I have. I guess I got done in under ten there. Didn't hear the buzzer, anyway. Thank you. Justice Bridges, do you have any questions? I do. Thank you, Justice. Mr. Smith, where a jury has made credibility assessments and determination regarding conflicting evidence, in this case opposing experts, isn't a JNLV precluded? Well, Your Honor, I believe that if there was a weighing of credibility as far as the witness testimony goes, that the jury failed to reasonably examine the evidence. And I really don't see how, you know, in light of the obvious way in which the defendant Nimmer and Martin coordinated their stories and told false stories to law enforcement at the scene and then coordinated them later at deposition, how their testimony can be given much weight in this matter. If you're talking about the evidence presented by the expert witnesses in the case, of course, the testimony by the plaintiff's expert, Mr. Billington, was supported by the facts at the scene. And the testimony by Mr. Bergmayer, the defense expert, was not supported by any facts at the scene and, in fact, was based on speculative and speculative. Okay. Mr. Smith, I get it. That's your assessment of it. But as you know, the question of whom to believe and the weight to be given to the evidence is a decision for the trier of fact. And in this case here, they heard that evidence. And from the verdict, it appears that they did not see the case as you have. In other words, when you look at the facts in this case, that is from Morris, all of the officers that arrived, from the photographs, the marks on the pavement. In this case here, the jury did not believe your expert. And, in fact, from the verdict, appeared to have given more credibility to the defense experts in this case. So my question had to deal with the JNLV would be precluded if this is, in fact, the case. Do you not agree? Your Honor, I believe that you're accurately reciting the law in that respect. Again, our position is based on the jury not properly weighing the evidence that was presented. Okay. And if the JNLV is appropriate, then we believe that it's against the manifest weight of the evidence and that a new trial should be granted. Okay. And I know with all of the issues here, my colleagues have a number of questions. So I'm just going to move ahead on these and hit certain areas. And so I would ask you this, Mr. Smith. Why isn't a tractor that's pulling a moor and being used to cut grass alongside the road be considered an act of husbandry? Well, Your Honor, if it is considered an act of husbandry, that doesn't necessarily define it as a farm use. I mean, mowing the side of the road is different from the kind of mowing that would be occurring at a farm. And this is a situation where both the design and use of the tractor are fundamental to the exemption. And for that reason, you know, mowing the lawn, mowing your lawn at home, at your house, is not necessarily a farm use. And neither is this municipal use of mowing the shoulder of the road, where you've got a situation that's fundamentally different from what you see using this mower at a farm. You're constantly exposing the tractor to traffic in the area, in the Roscoe Township area. And that's presenting a danger to vehicles that is not contemplated by the exemption, which, you know, logically is based upon the fact that you're not presenting that danger by not having the necessary safety equipment. It's a blanket exemption that all vehicles on Illinois roads have the safety equipment, brake lights and turn signals, except for a situation where it's a farm tractor and a farm use. All right. Mr. Smith, under the law, assuming NEMA is traveling eastbound on Rockton Road, does he have a duty to keep a lookout for vehicles that might be attempting him at a T-intersection? Your Honor, an ordinary vehicle would not have such a duty. That is correct. Although, you know, situational awareness requires that you be aware of what's going on around you. But this was not an ordinary vehicle. And that is the point here. Now, in the context that this occurred, you've got this 5,000-pound tractor pulling a mower. It's a slow-moving vehicle. It's extremely large, extremely heavy, extremely long. And when it's making that turn, it's making that turn in such a way that it's basically creating a wall of metal across the intersection there. Now, you've got both NEMA and Martin saying that they checked behind themselves repeatedly, that they looked behind to make sure there was nobody there, and they didn't see anybody there. You know, when you talk about duty, their actions show what a reasonable person does in that situation. You know, he's got a duty to be safe, and they were attempting to be safe, but they failed. They failed because they were not keeping their lookout. In your Fourth Amendment complaint, did you replete the equipment and turn signal violations regarding the tractor? We did not, Your Honor. In your reply brief, you admit you did not also address the proximate cause issue regarding whether the plaintiff could see the tractor's brakes or turn signal. Shouldn't this court consider that forfeited and those items forfeited? Well, Your Honor, as set forth in our reply brief, you know, the defense failed to raise the issue with regard to the lack of repleting that count in the post-trial motion, and so that should have been deemed waived, that objection. With regard to the failure to argue the proximate cause issue, as we again stated in the reply brief, we failed to argue it due to inadvertence, made the argument late, and the argument that we made is the exact same argument that had been made previously in the case. You know, we're asking that the court please overlook the omission and consider that argument in reaching the merits of this issue. Mr. Smith, as you know, Rule 213 does not automatically require exclusion of nonconforming testimony or witnesses, and our Supreme Court has provided courts with, I believe there's six, a number of factors to consider when being asked to exclude those that witness in their testimony. Which factors support your claim to bar the use of this demonstrative exhibit? Well, again, the demonstrative exhibit, we've set forth in our brief that the demonstrative exhibit was not properly disclosed, that the gist of the testimony that was to be provided was not provided. It was simply summarily described as we would be using the cycle and the tractor, and for that reason, there was prejudice that occurred, and we were unable to adequately respond to the presentation at the time, and we did object contemporaneously to that. Counsel, you were advised five weeks before his deposition about the use of that exhibit, correct? I believe that is correct, Your Honor. And you never timely objected to the use? You also didn't object to his 213 and 218 disclosures, is that correct? The only objections we would have made would have been at the time of the evidence deposition, Your Honor. That is correct. And you waited until he was sworn, and then you made those objections, is that correct? That is correct, Your Honor. Thank you, Mr. Smith. As I said, I know my colleagues have a number of questions. Thank you, Justin, for clearing. I have no further questions. Thank you. Justice Jorgenson, do you have any questions? Thank you. Not to belabor the point, but I am troubled by your position that the equipment issue with respect to the tractor requires that it be being used as a farm implement at the time of this occurrence, and that it wasn't. That's your position, right? Yes, Your Honor. And what do you base that on? I base it on the plain language of the Act, which requires both design and use, and also on the case which we cited to Hiscock v. Pluth. Your Honor, this was a case involving a situation where a driver of a tractor pulling a hay rack gave a ride to a couple of people, and during the course of that ride, they were thrown from the hay rack. One of them died. One of them was severely injured. The court in that case, in trying to determine whether the action by the injured parties was barred by the guest statute, examined the definitions of farm tractor and motor vehicle in detail. And they concluded that it wasn't just the nature of the vehicle, it was the use that it was being put to at that time that defined whether something was a motor vehicle. In that case, they were examining the guest statute, but they also looked at the language defining farm tractor. And the same principle applies in our case. In that case, the use of the tractor and the hay rack as a vehicle of transporting people determined that it fell under the guest statute rather than simply being a farm tractor. My point is that, in my opinion, clearly was being used transporting people for entertainment is not a farm use. But isn't mowing a farm use? Again, Your Honor, mowing can be a farm use. It can also be a municipal use, as it was in this case. It can be a domestic use. If you're mowing your yard, it doesn't necessarily fall under the category of a farm use, simply because it can be done on a farm. So you would be telling me if I had a little John Deere to cut my lawn and I drove it across the street, it would have to be fully equipped with brake lights and turn signals? No, I don't think that that would require it to be equipped with brake lights and turn signals at that point. But if it was in the situation of a municipality using this vehicle on a regular basis... But then aren't you suggesting then it's who's using it or what it's being used for? I would say who's... I don't understand your argument. Who's using it and also what it's being used for, Your Honor. I don't believe that driving it across the road would require... That brief of a period would require that it have brake lights and turn signals. It's not a motor vehicle that you would be driving in the road, typically. A John Deere that you would use to cut your lawn. But if it was, in this case, a much larger vehicle that is used on a regular basis to mow the shoulders of the road... So it's who's using it, how often it's being used, too? It's being used on a regular basis? But I guess my point is, did the trial court consider all these factors in making its decision? I believe that they did. And we felt that they decided it in error, Your Honor. Okay. All right. I will let it go then. Mr. Walker, the physician's assistant... Yes. One of your objections to that is that the defendant had no personal knowledge of his speed. The plaintiff had no... I'm sorry. My mistake. The plaintiff had no knowledge of his speed, correct? Yes, Your Honor. And that's evidenced by the fact that he contemporaneously reported both to Dr. Zarnke and to Deputy Morris, that he had no recollection of the accident and that he had amnesia about it. So then what would be the basis of that statement, if he had no recollection of the accident? Why would he have made that statement? And doesn't that lend some evidence that he did recall at least bits and pieces? Your Honor, again, because of the totality of the circumstances, the client had been administered doses of hydromorphone and morphine at 1.05 p.m., 1.32 p.m., and 1.35 p.m. The effects of hydromorphone are known to include confusion, agitation, and cognitive difficulties. At the same time that he's receiving these, he's reporting that he still has 10 out of 10 pain and that he's been diagnosed with a concussion. Right. Counsel, but he didn't report any of those side effects, correct? The patient plaintiff did not report any of the side effects that you just indicated. Your Honor, I believe that beyond being oriented times three, which means he knew who he was, yes, where he was and what day it was. There was no neurological evaluation beyond the finding of concussion. Right. Okay. You know, my colleague really made a series of questions about the jury's obligation to weigh the experts, so I will let that go. Justice McLaren, I have no other questions. Thank you. Thank you. Mr. Smith, I believe it is. Yes, Your Honor. Relative to Justice Bridges' questions regarding the failure to include the counts in the fourth complaint, you claim that the defendants waived waiver or forfeited the forfeiture. Is that correct?  By not arguing it at the post-trial motion. Did you argue it at the post-trial motion? Yes, I believe that we did, Your Honor. So you're saying that because the defendants didn't object to your abandonment of the counts, that that constitutes a forfeiture or waiver? That's correct. Correct?  How do you respond to the point that failure to include counts, I believe as indicated by the Supreme Court in Foxcroft, relates to any waiver or forfeiture insofar as a defendant or another party, when the purpose for the rule relates to what the trial court is supposed to be knowledgeable about insofar as what is going to be relevant, material, and competent during the trial or the hearing on motion for summary judgment, et cetera? If you don't understand where I'm going with this, this isn't just so much a question of forfeiture, it's a question of putting the trial court in a position of understanding that it doesn't have to address these issues, and raising it after the fact insofar as how it affects the cause of action. It doesn't just relate to prejudice that might apply to the defendant, it relates to the entire case insofar as how the trial court rules. Okay. Now, our argument on that issue was limited simply to the fact that the defense did not raise that defense during the pre-trial motion. And, you know, obviously... You said pre-trial, do you mean... Post-trial, Your Honor. Post-trial, Your Honor. Pardon me. Obviously, that is an established issue of law, an established rule of law in Illinois, and certainly it would apply. The plaintiff indicated to a physician's assistant, I believe their name was called, that he was going 65, 70 miles an hour. Is that correct? That is correct from the medical records, Your Honor, yes. Okay. And were there any... Was there any evidence of skid marks or braking marks that were attributed to the motorcycle tires? Yes, Your Honor, and they appear quite prominently in the photos. There are clear skid marks and then scrape marks leading up to the point of collision. And our expert, Dan Bergmayer, testified that based on the angle taken by the cycle, that it was a sharp angle that you don't ordinarily get in a passing maneuver, that it had to be an act of avoidance. And that also that the plaintiff was not on the cycle at the time of collision, he had been thrown from the cycle where the cycle was laid down and where the friction marks and scrape marks appear in the photos. Because he could not have been on the cycle as it was skidding along the ground. He had to have been thrown in what's called a high side maneuver. High side maneuver results from braking a bike at, not locking up the brakes, but at near threshold. The bike then wobbles and throws the driver. The bike goes down and continues in the same direction that it had been going. And the thrown rider also continues in that same direction. And that's consistent with what we have at the scene where Torrey reached his, his body reached his final place of rest is directly in line with the direction of those scrape marks and those friction marks on the road. So when he, when the plaintiff blew off the motorcycle at 25, 27 miles per hour, he had slowed from whatever speed he was going to 25 or 27 miles per hour, correct? That's correct, your honor. And we don't have any information as to what that actual speed was. But, you know, the, both of the experts have said that there's no evidence that, that he was traveling at higher than, greater than the speed limit. Okay. I have no further questions. Thank you. Panel, do you have any questions based upon other questions raised by the panel? Uh, I do, uh, Justin McLaren, just a follow up to what you, uh, you asked Mr. Smith, Mr. Smith, you, you just indicated that, uh, there were other, uh, skid marks on the road. And, uh, I viewed the exhibit here and I know I'm not to substitute my, uh, the evidence, but the jury clearly had an opportunity to do that. Uh, but only your expert testified about seeing breaking skid marks. In fact, uh, the defense expert even talked about the one foot compression of the motorcycle size because it impacted the tractor without stopping. Uh, so the only, and correct me if I'm wrong, but the only, uh, evidence about skid marks came from your expert. Is that correct? Well, your honor, I believe that my, my expert testified to seeing a very light skid mark at the scene that was prior to the friction marks and scrape marks that lead up to the cycle. When I was talking about, um, uh, uh, I guess skid marks, I was talking about the friction marks that lead up to the cycle at its point of rest. They're about 14 feet of, of, uh, scrape marks and skid marks from what appears to be the rear tire and the rear pipes in the site. Okay. I thought justice McLaren asked you about the, uh, breaking mark. So, uh, I have no further questions. Justice. Thank you, uh, justice Jorgensen. Do you have any other questions? Did you say you do?  Okay. Thank you. Uh, thank you, uh, Mr. Smith. You'll have an opportunity to make rebuttal. Thank you. Your honor. Uh, Ms. Shelley, correct? Yes. Sorry. I apologize. I didn't mean myself. Okay. You, you, uh, you may proceed. Thank you. Uh, good morning, your honors, uh, justice McLaren, justice Jorgensen, justice Bridges. I represent the Appalese Roskill Township and Frederick Nimmer in this case. Um, I think one of the, the issues that, um, Certainly justice Bridges and, uh, McLaren touched on, uh, in questioning Mr. Smith, uh, was that it is up to the jury in this case to weigh the evidence that they hear and come to a decision. And what happened in this case, the plaintiff had his day. He had an opportunity to present his case to 12 people in the jury box. And unfortunately for him, he was unsuccessful, but that doesn't mean that he didn't get a fair trial. Um, even taken at his best in this appeal, the issues that the plaintiff is raising for this court are really evidentiary issues, which are in the sound discretion of the trial court to decide. Um, and as the trial judge, judge Hansel, uh, set out in her rulings on the record in this case and in her written opinion, denying the post trial motion, she had very good reasons for those rulings, uh, and that decision denying the post trial motion. Plaintiff wants to come in now and complain, uh, about some evidence that they say the jury should not have been able to consider, but his problem, uh, throughout this appeal is that he did not make his record to preserve those errors for this court to consider. Um, it's absolutely within the province of the jury to weigh credibility. Um, and one of the things that the, that is noted in a JNOV in particular, um, is that it's not up to the trial court to weigh evidence or credibility. Um, whether a witness is credible solely within the province of the jury. In fact, uh, it's in the very first jury instruction that they get, they get it and they get that instruction at the beginning of the case and at the end of the case, um, before it goes to, to deliberation. In this case, the jury heard a lot of different evidence, um, from eyewitnesses at the scene, from police officers, physicians, reconstruction experts. They had an opportunity to view photographs of the vehicles at the scene, um, that were taken that day, uh, taken later by a number of experts, photographs of the scene that we're taking that day and other days. And they even had an opportunity to see the actual tractor and an identical exemplar motorcycle. That's all evidence. The jury had an opportunity to hear and see all of it. And then it was up to them to weigh that evidence and to come to a decision. Uh, the jury heard basically two different versions of this accident. Uh, one offered to them by the plaintiff's reconstruction expert, which was that the tractors were on the shoulder of the road and the plaintiff, the plaintiff was intending to pass them on his motorcycle in the eastbound lane of Rockton Road as he approached them. The other version of events that the jury heard, uh, came from the, uh, Frederick Nimmer, Ryan Martin, the people, the gentleman driving the tractors, uh, the day of that accident, the defendant's reconstruction expert, two police officers at the scene. That version of events was that the tractors were in the eastbound lane and the collision happened because the plaintiff on his motorcycle was attempting to pass them at T intersection in the westbound lane. Uh, so the jury had the opportunity to hear all of that evidence and then they got, then they had to decide two things. One, whether or not Fred Nimmer was negligent in the operation of his tractor. And that involved a couple of different things. They could have found, uh, that he didn't do anything that could be considered negligence. He didn't, you know, in traditional negligence analysis, he didn't breach any duty that he had to the plaintiff. They could find that he wasn't negligent because no action of his caused the accident. They could find that, um, maybe he was negligent, but the plaintiff was more than 50% contributorily negligent. And so therefore he didn't have fault. This isn't a binary decision. They didn't have to decide, uh, one or the other. They got to take all of the factors into account and then, um, reach a decision. So council, one of the arguments he wants to make on appeal is that, um, that the jury should not have considered whether or not the plaintiff was contributorily negligent, that there was somehow insufficient evidence or lack of foundation. Um, you know, putting aside, um, the Mr. Bergmeier's testimony about the plaintiff's negligence, there were other pieces of the plaintiff's negligence for the jury to consider, such as his admission about his speed to PA Walker in the emergency room. Um, and the testimony of his own expert that said if the tractors were in the eastbound lane of Rockton Road prior to the accident, then the accident was the plaintiff's fault. Um, plaintiff didn't object to the issue of contributory negligence, uh, in the instruction that was given to the jury. Um, if he had a concern, if he thought that there was insufficient evidence of his contributory negligence for the jury to consider, his obligation at the time of the instructions conference was to object and to offer a different instruction. Um, he didn't do that. In fact, he tendered an instruction that defined contributory negligence. Um, he tendered an issues instruction that included, frankly, more allegations of contributory negligence than the one offered by the defense, which is the one actually accepted, um, and read to the jury. Um, there were instructions on the burden of proof for contributory negligence, instructions on the use of the verdict forms, um, and verdict form B, uh, which is the form that you would use if you're going to find in favor of the plaintiff and then subject to a reduction for contributory negligence. He did not raise the issue with respect to plaintiff's contributory negligence in the post-trial motion or in his initial appeal. Um, if the court was going to consider the issue, uh, if the appellate court was going to be able to consider the issue, whether or not contributory, the contributory instruction was, um, whether it was offered in an abuse of the trial court's discretion, they would need a record in front of it. Um, the plaintiff's failure to object in the post-trial motion, to object at trial in the post-trial motion, uh, means that there's no record for this tort. Court to consider with respect to that particular issue. Um, and where there's no record, the presumption is that the trial court properly exercised its discretion. Um, while we're talking about jury instructions with respect to the 2001 instruction, um, that plaintiff argues was, um, his instruction should have been the one given to the jury, not the defendant. Uh, the instruction offered by the plaintiff included four parts. Um, his, I think B and C were the ones that were actually given to the jury. Um, he did not raise the issue of A, which is failure to keep a proper lookout. Um, he only raised the issue of D, which was the basic secondary act of negligence, um, Nimmer's tractor running over the plaintiff's leg. Uh, so that issue has been, uh, with respect to A and the failure to keep a proper lookout, that issue has been forfeited. Um, as the trial court noted in the post-trial motion, plaintiff frankly waived this issue entirely by failing to include, uh, the jury instruction in the post-trial motion or the record of the, that instruction conference for the court to be able to consider. Um, he doesn't cite any legal authority that supports that argument either. Um, specifically with respect to the issue of the A, which is the failure to keep a proper lookout, um, that is a general statement of duty. The case that, um, plaintiff cites in his reply brief colonial in Motor Lodge versus A, um, you know, contains that statement, uh, about the ordinary duty of a motorist to drive his car carefully not to cause injury to others. Um, I will note that in that case, that wasn't about a, uh, whether or not that should have been given as an instruction to the jury. It was a summary judgment case and whether or not there was a duty, um, for a motorist to not, um, hit an air conditioning or heating unit at a hotel that caused a, uh, caused an explosion. And that was really about foreseeability, which is not an issue that we had here at all. Putting all that aside, the jury in this case actually got that instruction in 70-01, um, which says it's the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger, exercise ordinary care at all times to avoid a collision. So they actually got that instruction. But the, the question in the issues instruction isn't a question of duty. It's a question of what is the issue in this case? Um, if you look at the comments to the jury instructions with respect to the issues instruction, the first thing that it says is an issue instruction tells the jury what the points in controversy are between the parties and thereby simplifies their task of applying the law to the facts. They are to be, jury instructions are to be viewed as a whole and reversible error occurs only when a party shows that the instructions misled the jury and seriously prejudice the party's right to a fair trial. Nowhere in any of Plano's post-trial motion, um, or in his appellate brief does he argue that somehow the jury was misled by the instruction that they got. The issue in this case, really the primary issue, the one that the jury heard a lot of evidence about from the plaintiff, plaintiff's reconstruction expert and from the defense's reconstruction expert is where were the tractors when they, when Fred Nimmer initiated his left turn. Every witness in this case, including the plaintiff's expert agree. Yes, Shelley. I believe the, uh, the timer went off indicating that you've used your 10 minutes. Oh, I'm so sorry. I didn't hear it. It's very quiet. Will you please close? Yes, my last point on that issue is that if the plaintiff intended, if the plaintiff wanted to test the general verdict, um, there were, because there were multiple dates. A special interrogatory to test that verdict. So, and where there are multiple dates for a verdict. That's a jury found on the paper in every, every defense. So if there's, even if there was one air, the verdict stands on the other. Thank you. Justice Bridges, do you have any questions? I do. Thank you. And so the Supreme court rule, um, two 13 to 18 required defendants to provide full disclosure of the experts, their area of expertise, uh, the subject matter of their testimony, et cetera. Uh, and the objection, um, from, um, the. Plaintiff in this case says that you did not comply with those rules regarding this demonstrative testimony from your reconstruction expert. What's your response to that? Well, a couple of things, your honor, first of all, um, unfortunately, this is another issue that the plaintiff waived. Um, they did not raise it in their post trial motion. Um, at all. Um, there was a comment to demonstrative evidence in a heading that is not, that is not sufficiently preserve any air. It doesn't even identify. What's demonstrative evidence issue. Um, they didn't. And so. The trial court didn't have an opportunity to reconsider that decision, which is one of the things. Fired file motion. I'll court an opportunity. Their decisions and I guess they got something wrong. That wasn't me. The other problem is. That the plaintiff didn't include. Or. Consider the basis for the trial court decision. And the law is absolute record. It's presumed the order. Um, with respect to the actual 13 issues. I know that we set out. Our response. Prejudice. Plaintiff does not point out any violation of. We'll also distinguish that. Search of evidence. Substance. So. The standard for whether or not a trial trial. Um, Whether it. In reaching their decision. Assists the jury in understanding the issues in the case. In this. Let me just ask you this, because the. Was the issue was, is that when he objected at the depth. Deposition. There was there an adequate foundation to allow this reenactment. Because when you look at the testimony of your expert. It was. Essentially a reenactment of the entire accident as he. Understood based upon his expertise. So you're saying that you provided. The details of that in your rule. To 13 F and to 18. I would disagree that it was a reenactment. Your honor. The foundation was. Mr. Bergmeier sat at a table away from the tractor and the motorcycle. And he went through the photographs that were taken of the vehicle. That here's where the points of contact are. Then he went over after going through all those photographs. All those points of contact. And he went over. Again. All those points. Contact. One another. That was all included. In his original. Disclosure. And in his deposition. I'm not aware. And the plaintiff doesn't say. Fire. Us. Presentation. I'm not aware of. Precisely. We're going to. Ask. We're going to ask it. For. Offered. A. Demonstrative. Exhibit. And I would say that. With. I'm sorry. You can finish. I'm sorry, Michelle. I was just going to say that's consistent with demonstrative use. As in the Bachman case, which. And Michelle. Isn't a party. As you know, entitled to an instruction on any theory of their case. So long as it supports the evidence and. Instructs the jury. And so when you look at the. Proposed instructions by plaintiffs in this case. Why, why is, why shouldn't it be considered. Error to have barred those. Instructions. Are you specifically with respect to. Part D with the running. Part D you, you indicate that he has waived. I'm referring to the others. Oh, I think I met. I believe he waived part a your honor. I'm with respect to part D. Okay. Motion. I just want to. So. The point of the jury instructions is. Clarify the issue for the jury and to not use them. One of the issues that percolated around in this case, but didn't actually get. The complaint got amended. Was. At one point, the plaintiff pled. Two occurrences. He decided to amend the complaint because the trial court told me. Evidence of his damages because of the way that came in. So then there was one indivisible. Active negligence. You have allowed that part. With respect to the tractor running over the plaintiff's leg would have very much. I'm not aware of anything that says that you have to give a separate instruction for the same. Negligent. If Fred Nimmer, wasn't negligent. That wasn't. Then there's no way for the. Three to find him negligent. As a result. Okay. Thank you. Michelle. Just as clear. I have no further questions. Thank you. Thank you. Justice Jorgensen. Do you have any questions? I do counsel. The testimony by the physician. Walker. It's pretty speculative evidence. That's. Why should that have come in? Well, I disagree. I agree that it's speculative. Your honor. The. He recorded what the plaintiff told him. The plaintiff is discovery deposition, frankly, testify that he's the only person who would have had knowledge of his speed prior to the occurrence. It is an admission against his interest. You know, Mr. Walker is a neutral witness. He's providing him treatment. He's simply recording down what the plaintiff told him. And that is admissible. Both as an admission. Admission against interest. Right. To the prejudice versus probative value. I mean, What about the. The fact that he had just been given a mega dose of painkillers. Well, I appreciate that your honor, but there was nothing in the record that suggested that there was any issue with his capacity. Simply being given a painkiller. There's no evidence in this record that it affected his capacity. There's no presumption. That I am aware of that giving somebody painkiller. In this case or in any case per se. Impacts capacity to give a statement. That wasn't my burden to prove. If the plaintiff took. Wanted to. You know, submit evidence that his capacity had actually been affected. He certainly had the ability to develop that evidence and he didn't do so. Nevertheless, the jury did hear evidence that. You know, that, that was a potential effect of delauded and they were able to, to consider that. I would argue that his pain and the painkillers in this. Situation at best goes to wait, not to admissibility. And my other question is about the farm equipment. And whether or not it should have had safety equipment, brake lights, et cetera. Hold on. Your position is that they were driving on the road. They were not driving on the shoulder, right? Yes, your honor. All right. So if you're driving substantial distances on the roadway. As opposed to only mowing. It's not a safety equipment.  So it's not a safety equipment. In your opinion, why does this remain a farm? A piece of piece of farm equipment. It's a piece of farm equipment because that's how it's defined under the statute. It's it's the definition. Which the court trial court appropriately found that it met. It's a piece of piece of farm equipment. And the reason for that is that it's designed and primarily used as a piece of. Farm equipment. And chapter 12 of the vehicle code exempts an entire category of vehicles from the requirements that they have brake lights and turn signals. The problem in this case, aside from that, is that the plaintiff has waived review of those issues by his failure to replead them. In the fourth amendment complaint. The issue is not. Unfortunately. Unfortunately for the plaintiff. I understand. I get that argument, but my question is, should we look at all of those factors that council outlined? How would you address it? How often it's used, who's using it, how often it's used, how often it travels on a roadway. Aren't those factors to be considered. No, your honor. They're not. There's nothing in the statute that requires that kind of analysis. And the plaintiff doesn't say any case law that applies that kind of analysis. In fact, One of the cases that the plaintiff sites. With respect to. The. Construing stretch construing statutes in a way so that it doesn't result in absurd results.  The next slide. Talks about it's not particularly applicable because. It's the Novak versus city of country club Hills. It's about a city's obligation to pay for a catastrophically injured police officers, health insurance premiums. And so the city of country club Hills. The Supreme court. The Supreme court ultimately agreed with the city that fixed the time of an. When they had to start paying that as the date, someone was judged disabled, not the date of the injury. And the point that they were making in that situation was that. That there was, that there was a time of injury.  And that there would always be a hard and fast date of where disability was. Judged, but a date of injury could be shifting. If you were to apply the plaintiff's definition in this case. The, the definition would frankly cease to have any real teeth. It would shift constantly. And the way that it's defined in the vehicle code farm. Tractor is a category of vehicle. There's nothing in that definition. There's no case that I am aware of that says there's nothing else anywhere in the vehicle code. That says it's only a farm tractor. If a farmer's driving it or that it's a regular tractor, if it's owned by somebody else. So I think it's just a matter of applying different definitions. Well, is your position. Then you just look at the piece of equipment. It either is or it isn't regardless of who's using it. How often it's being used or whether it's driven on a roadway. Yeah. What it looks like. Yes. Okay. Fair enough. I have no other questions. Thank you. I basically have one or two questions. My correct. And believing that there were no special inner. Rogatory submitted to the jury. There were not your honor. And none were the jury. The jury wasn't asked where did the accident. Happen or where was the. Tractor prior to the accident or the collision or the contact. Things like that. There was nothing like that. Was there. No. That is correct. Your honor. So it's just a general verdict. Yes. And. Implicit in what you've said, there is, there was no interrogatory relating to apportioning negligence between plaintiff and defendant. Is that correct? That is also correct. I have no further questions. Any other questions by the panel? I have no further questions. Thank you. Thank you. Mr. Smith, you may proceed. Thank you, your honor. For our reply in section one, defendants mischaracterize the plaintiff's case is consisting solely of opinion evidence from this controlled expert witness. Ignoring the overwhelming amount of physical evidence at the scene. Is set forth in sections one a and one B of plaintiff's brief. On which Mr. Billington actually based his opinions. The plaintiff's case.   The plaintiff's case. And the complete lack of physical evidence, supporting the defendant's position. The defendant number was driving on the roadway. They cite to no evidence at the scene that supports their position. They referenced testimony by Nimmer and Martin, but make no argument for how reasonable minds weighing that evidence could give it any weight. Light of their self-interested lies to law enforcement and at trial. And they make no argument against plaintiff's assertion that defense expert, Roger Bergmayer's opinions were flawed to the point of irrelevancy. He argues that the jury could have found greater than 50% contribution. But the contribution, which defendants claim occurred took place outside the view of Nimmer and Martin. That's expert. Roger Bergmayer offered opinions on pre-collision. Contribution. But he provided no evidentiary basis for his opinions. And defendants cite to none. And his response has conceded this issue by failing to cite to any contradictory evidence in the record. In section two, defendants claim we forfeited the issue by not including the count, which had been summarily decided in our fourth amendment complaint, but they failed to argue this. In the post-trial motion is as we've stated before, and therefore waive the objection on the issue. And it's also claimed we didn't make an offer of proof. However, decision to summary judgment issue decides the evidentiary issue as well. Count six is allowed to stand brake lights and turn signals are clearly relevant. The second procedural argument is therefore moved. For section three, a consistent with the second district case. Gaylord versus campion at all. The factual basis for all the arguments made on appeal are contained in the post-trial motion and have not been waived. On some part, one probative value versus prejudice. The defendant's assertion that the only prejudice that applies to the calculation is. Bias sympathy, hatred, contempt, or horror is incorrect. We'll have evidence for three only cautions against unfair prejudice in the case rush versus. Hamdi. Cited by the defense has not been followed for that more restrictive premise in the second district or elsewhere. On some part to the hearsay, upset the exception. Then it's conceded the plaintiff argued the statement on speed was inherently unreliable. The fact that it should not have been allowed into evidence as an exception is a logical corollary of its unreliability. And the plaintiff has amnesia. So is in fact unavailable to testify in response to the statement. And so part three, personal knowledge, defense cannot establish that the plaintiff had personal knowledge when the statement was made. It's made statement to Walker lacks a necessary foundation, regardless of what rule of evidence they seek to introduce it under because of the contemporaries contemporaneous statements of amnesia. On some part for capacity alert and oriented is different from being neurologically sound. There was ample evidence that Mr. Kikafor was neurologically compromised. Including his diagnosis with concussion, his amnesia about the accident. Statement by Dr. Can affect cognitive function. On section three B defendants argue that plaintiff never contested that Bergmayer was qualified as an expert, but that the plaintiff said, and the plaintiff said the opportunity to cross examine him. Both of these facts are meaningless to the argument that Bergmayer testified to a series of opinions that were completely unsupported by any factual evidence contradicted by seeing evidence in contrary to his own witnesses. Contrary to the requirements set forth in his Scott versus Peters. There was no adequate foundation for the opinions. There was no data and evidence to support them. And they were based solely on conjecture and speculation. And it's in their response, make no citations to the record to demonstrate the basis or foundation for any of Bergmayer's opinions at issue. And therefore conceded this issue on the merits as well. In section three C, although it was lumped in with other complaints about Bergmayer's testimony, the issue was preserved. Plaintiffs argued that defendants failed to lay an adequate foundation for the arguments in the post round motion.  arguments in the post round motion. Mary and its argument in subsection two of this. Section three C. Cited to his Scott versus Peters for the lack of data and evidence. And then without factual support, it's just conjecture. Without probative value. Complaints have also relies on many of the same facts cited in the post round motion and replying support and making its arguments in section three C. With regard to section four, defendants argue that the argument on item a was way, but the allegation in the post round motion that the instructions failed to inform the jury of the available negligence is sufficient to preserve the issue. Of error as to subpart a as well. Although he initially testified that drive it, that a driver turning from the pavement has no legal duty to check for passing vehicles. Mr. Billington plaintiffs expert corrected that to say that all drivers need to have situal situational awareness when making a turn, which may include looking behind you. And that attractor driver is required to make a safe turn with proper lookout. Someone driving a large, slow moving and dangerous piece of machinery like the tractor at issue. It's reasonable to look behind when making a turn and both never in Martin testified to doing so repeatedly. On subpart D. If the facts of the accident are all one act of negligence, numerous negligent driving to the shoulder and then running over the plaintiff's leg is also a substantial and procuring part of that negligence that caused the player's injury. In fact, it's the most significant injury. And so it's the most significant part. And lastly, by excluding additional negligence by numerous from consideration. This portion of the negligence pie gets smaller and the plaintiff's gets bigger preclude prejudicing, both the potential verdicts that were available for the defense. And that's all I have on the five minute reply. Thank you. Justice bridges. Do you have any questions? I do not. Thank you. Justice. Thank you. I have no further. I have no further questions either. The case will be taken under advisement and a disposition. Rendered in at time. Mr. Clerk, you may close the case and terminate the proceedings.